## BLAGG VS. HUNTER.

The acknowledgment of a deed of gift of slaves, before the clerk of a court, without the attestation of his official seal, is insufficient to admit it to record; nor is it evidence to prove the title of the donee—the possession remaining in the donor.

The failure of the clerk of a court to attest, under his official seal, the acknowledgment of a deed of gift of slaves, executed and recorded prior to the passage of the act of 5th Januaay, 1843, was not cured by that act.

If a person, under the influence of intoxication, so as to deprive him of the exercise of his understanding, makes a deed of gift of slaves, such deed is voidable at his election, or of any one claiming under him; but if he acknowledges the deed after regaining his reason, such act is a ratification of the deed.

The current report and understanding in the neighborhood, that a donor had made a deed of gift of slaves when drunk, and disavowed it when sober, is not admissible as evidence in an action for the slaves between the donee and one claiming under the donor; but the subsequent acts and declarations of the donor promptly made and persisted in upon a return of reason, repudiating the deed, would be competent to go in evidecce with other attendant circumstances illustrative of his mental condition.

*Appeal from Randolph Circuit Court.*

Hon. B. H. NEELY, Circuit Judge.

BEVENS, for the appellant. The deed should have been admitted by the Court to go to the jury as an enrolled or recorded deed; the certificate of the clerk should have been received, admitting it to record, thereby placing the plaintiff within *sections* 7 *and* 8, *article* 3, *chapter* 153, *Digest.*

As to the effect upon the plaintiff produced by the rejection of the deed, as an unrecorded deed, see 2 *Bl. Com.* 441; 2 *Kent Com.* 354; 1 *Ark. Rep.* 87; 7 *J. J. Marsh.* 204; *Dig., ch.* 73, *sec.* 6; *ch.* 153, *sec.* 7 *and* 8.

Until the act of the Legislature of the 19th December, 1846, subsequent to the execution and acknowledgment of the deed offered in this case, there was no statute prescribing the mode of

acknowledging deeds of personal property—the *16th section, ch. 37, Dig.*, relating entirely to real estate, and the provisions of this act, cannot, with propriety, be applied to conveyances of personal property.

A deed, recorded in the proper office, is prima facie evidence that it was regularly proven and admitted to record: and so where the person taking such acknowledgment styles himself clerk of the Circuit Court, the certificate is prima facie evidence that he is such. *Lessee of Talbot vs. Simpson, Peters' C. C. R. 188; Lessee of Willing vs. Miles, Ib. 429; 4 Wash. Rep. 715.*

But if there was any defect in the certificate of acknowledgment, it was cured by the act of the 5th January, 1843.

The subsequent declarations of the grantor against the deed were very clearly inadmissible. 11 *Ark. Rep.* 249; 1 *Ch. Pl.* 603; 16 *J. R.* 110; 1 *Greenl. Ev.*, sec. 23.

The evidence as to the notoriety in the neighborhood of the grantee, that grantor repudiated his deed, was incompetent and inadmissible. 1 *Greenl.*, secs. 137, 138; *Morewood vs. Wood*, 14. *East.* 329; 1 *Stark. Ev.* 30, 31.

FAIRCHILD, contra. The deed did not appear to have been acknowledged. There was a certificate of acknowledgment written out and signed by the clerk, but it was not authenticated by the seal of the Circuit Court, or by any seal of office, without which there was no evidence of acknowledgment. It was then not entitled to record, and could not be read to the jury as a deed acknowledged and recorded.

Mr. Chief Justice WATKINS delivered the opinion of the Court.

In an action of trover for a slave, the plaintiff claimed title by gift from one Lewis, and on the trial offered a deed of gift from Lewis to him, dated 10th of July, 1841, which purported to have been acknowledged by the donor before the clerk and ex-officio recorder of Randolph county, and by him filed for record in his office, all on the same day. The acknowledgment is attested by

the signature only of the clerk, not accompanied by his seal of office, or purporting to be sealed. The validity of this deed was also assailed by the defendant, upon the ground that it was made by, and procured from, Lewis while in a state of intoxication. He afterwards disowned the act, and remained in possession of the slave in controversy until his death, in 1844. In April, of that year, he made and published his will, bequeathing his property, including this slave by name, to his wife, Phœbe Lewis, who held him in her possession until May, 1849, when she sold him to the defendant Hunter.

The donor, being no blood-relation of the plaintiff, the alleged gift would not be upheld because made upon any good consideration, as between the parties to it, by any thing contained in the 6th section of the statute of frauds. *Digest, p.* 541.

The judge presiding at the trial excluded the deed offered as a compliance with the statute concerning gifts of slaves, (*Digest, Title, Slaves,*) because the acknowledgment was insufficient to admit it to record, but permitted the deed itself, without the accompanying certificates, to be read to the jury as evidence of a parol gift, if the plaintiff could prove that it was accompanied with a delivery of the possession. Slight as the proof was, that possession accompanied the gift, when contrasted with the opposing evidence that it remained with the donor, the plaintiff had the benefit of an instruction on that point. So that the real question is, whether the Court decided correctly in excluding the certificates of acknowledgment and record of the deed. The words of the statute are, "No gift of any slave, shall pass or vest any right, estate or title in, or to, any such slave, in any person whatsoever, unless the same be made, first, by will duly proved and recorded; or, second, by deed in writing to be proved by not less than two witnesses, or acknowledged by the donor, and recorded in the county, in which one of the parties lives, within six months after the date of such deed. This act shall only extend to gifts of slaves, whereof the donors have, notwithstanding such gifts remained in possession thereof, and not to gifts of such slaves,

as have come to the possession of, and remain with. the donee, or some person claiming under such donee." This act does not, like the general statute concerning conveyances of real estate, passed during the same session of 1837, specify the officers before whom the acknowledgment may be made, or the mode of taking it, as for example, if taken before a clerk, that it shall be signed by him and attested by his seal of office, if there be one. Construing these statutes together, as part of one entire system of registry, it seems plain, that when the General Assembly have required, or authorized any deed, or instrument of writing,. to be acknowledged and recorded, it is understood that the usual mode provided for other cases is to be adopted, as well in respect of the manner of taking and, certifying the acknowledgment, (see also the statute concerning " Mortgages,") as of the officers empowered to act in such cases. Without such a construction, it might be contended, that the clerk, in the present case, had no authority to take and certify the acknowledgment of a deed of this kind in any mode. The attestation then, of the clerk, without his official seal, was insufficient to admit it to record ; as much so, as if the deed, having two or more attesting witnesses, had been proved by the oath of only one of them. The plaintiff relies upon an act of January 5th, 1843, to the effect, that all deeds, bonds, mortgages, and other conveyances of real estate, theretofore recorded, whether duly recorded or not, under the provisions of the law in force at the time of recording, should not, after the passage of that act, be impeached for not being duly recorded, but should have the same legal force and effect, as if recorded in the first instance; saving, however, to all persons any lien or right, in law or equity that might have intervened prior to the passage of that act. The only effect of this act (even supposing it to apply to chattels, mortgages and deeds of gift of slaves,) would be to legalize, from that time forward, the recording of conveyances, which had been spread upon the public record, notwithstanding some defect or informality in the acknowledgment of them, so as to make such records constructive notice to creditors, purchasers, and all third

32BB

persons, who might subsequently acquire an interest in the property, of the existence and contents of deeds, valid in the first instance, and sufficient to pass the title as between the parties to them. But it could not have been designed by it to impart validity to deeds, which were void in their inception, or which had become inoperative to pass any title from the donor, because of the failure to comply with certain requisites prescribed by the statute. It may seem a harsh and severe construction of the law, by which the plaintiff is to lose the property, or be deprived of any right he might have had to it, because of an informality, not owing to any fault of his, but to an omission or neglect of duty in the clerk. The statute for authenticating gifts of slaves, where there is no delivery of them to the donee, was intended to guard against frauds, and any course of decision, by which its plain requirements might be qualified or explained away, would have a most mischievous tendency to the public at large, while in any particular case the person injured by neglect of duty in an officer has a remedy by action against him.

The Court instructed the jury, that if they found from the evidence, that Lewis made the deed of gift in question, under the influence of intoxication, so as to deprive him of the exercise of his understanding, the deed would be void, and they should find for the defendant. Although there was a conflict of testimony on this point, the jury would have been well warranted in finding, upon the whole evidence, that the donor, at the time he executed the deed, was so drunken, or so much under the continuing influence of previous intoxication, as to be devoid of reason and understanding, and incapable of comprehending the nature and effect of the act. The plaintiff's father, who is shown to have been instrumental in procuring the deed, was present at the time it was prepared and executed. According to the tendency of the modern cases, see 2 *Kent Com.* 452; *Barrett vs. Buxton*, 2 *Aikin* 167; *Gore vs. Gibson*, 13 *Mees. & Welsby* 623; *Smith on Contracts* 232, where this question is discussed, a deed, executed under such circumstances, would be voidable at the election of the donor, or

any one claiming under him. On the supposition that the acknowledgment was valid at the time, or might have become so, if made before a competent officer, and duly certified at any subsequent time, within six months from the date of the deed, the instruction should have extended as well to the time of the acknowledgment, as to the making of the deed; because if the donor was rational when he made the acknowledgment, it would be a ratification of his previous act, though done while in a state of actual intoxication, or of *delirium tremens*. The Court erred in permitting the defendant to adduce evidence, to prove that it was currently reported and generally understood in the neighborhood that Lewis had made such deed of gift when he was drunk, and that when he became sober he disclaimed or disavowed it. Reputation or hearsay of matters which concern private titles, is not admissible, unless for a particular purpose, affecting a state of case which did not exist here. For example, if the deed had been regularly proved or acknowledged and recorded, evidence of such a common report, current in the neighborhood, might perhaps be admitted against one claiming to be an innocent purchaser from the donee, if shown to have been in the neighborhood when the report prevailed, and in a condition to have heard it, as a circumstance to charge him with notice. But as against the donee himself, the subsequent acts and declarations of the donor, promptly made and persisted in upon a return of reason, repudiating the deed, were competent to go in evidence with other attendant circumstances, illustrative of his mental condition, and as these appear to have been sufficiently proved, the judgment ought not, upon a motion for new trial, to be reversed for the error adverted to. In any view, the judgment would have to be affirmed, upon the first ground, that because of the invalidity of the deed, the plaintiff failed to show any title in himself; and it becomes unnecessary to notice any other exceptions reserved in the Court below or argued here. Affirmed.