## Anderson vs. Dunn.

A plea, in replevin, that the property in dispute is in the *succession of A.*, and not the property of the plaintiff, without naming the persons *in succession of A.*, is good on demurrer—the allegation, that it is in the succession of A., being matter of inducement to the traverse of the plaintiff's title, and not an issuable allegation.

A defendant is not injured by the judgment of the Court sustaining a demurrer to a plea, if he has other pleas in under which he could have introduced any evidence upon the trial, that would have been admissible under the plea demurred to, (1 *Eng.* 536; 18 *Ark.* 359.)

It is no error to strike out a notice filed by a party of what he would prove on the trial, where he has the right to prove the facts, under the issues, without giving such notice.

The statute of five years possession of a slave, (*Dig. chap.* 153, *Art.* 1 *p.* 943,) is a statute of title as well as of limitation; and the defendant may prove title, by adverse possession or lapse of time, under the general issue in replevin, or other plea traversing the plaintiff's title; and so, in such case, there is no error in the refusal of the Court to permit the statute of limitations to be filed as an additional plea, whether the motion, to file it, be in time, or not.

The plaintiff claimed under, and offered to read in evidence, a deed of gift, conveying to her the slave in controversy, but providing that her father, the defendant's testator, should receive, manage and control the slave during his life or until plaintiff attained the age of twenty one, in connection with evidence conducing to prove the execution and delivery of the deed and, also, the delivery of the slave to the father: the deed was not recorded: *Held* that it was admissible in evidence.

Natural love and affection is a good consideration in a deed of gift from a brother to a sister.

Voluntary conveyances made in fraud of the rights of creditors, if executed, are valid as between the parties, etc., so if a party acquire the possession of property, as trustee under a deed, neither he, nor his executor after his death, will be allowed to defeat the title of the donee by setting up that the deed was executed in fraud of creditors.

The plaintiff having made proof conducing to show title to the property in dispute by gift from her brother, the defendant offered to prove that her attorney had filed, in the probate Court, and moved the Court to admit to probate the will of her mother, whereby the *same and other property* was bequeathed to the *plaintiff and others: Held,* that such evidence was properly excluded.

But *quere:* what, if the defendant had offered to prove that such will had been admitted to probate, and the plaintiff had actually claimed the benefit of the legacy?

Where a slave is conveyed by deed to A with a provision that B shall receive, control and manage it during his life, or until A shall arrive at the age of twenty-one years, and B accepts the deed and takes possession of the slave under it, his possession is, in contemplation of law, the possession of A, and not such an adverse possession as will give him title under the statute:

A person who takes possession of property under a deed as trustee for another, will not be allowed to set up, in avoidance of the deed, that he assented to it for the purpose of getting possession of his own rightful property—if the property were really his, he had other remedies to obtain possession.

*Appeal from the Circuit Court of Union County.*

Hon. A. A. STITH, Circuit Judge.

CUMMINS & GARLAND, for the appellant.

The deed of gift from Milton Holloway relied on by the appellee, for title to the slave, Sam, is an imperfect voluntary gift, to take effect in the future, without a meritorious consideration—never acknowledged, or produced and recorded, and will not be enforced under the circumstances of this case, whatever may have been the intention of the parties. *Dyer et al. vs. Bean*, 15 *Ark.* 533; *Digest ch.* 153, *secs.* 3–5; 1 *Ark.* 83; 3 *Littell* 280; 7 *J. J. Marsh.* 204–9. If it was made by the assent of Joseph Holloway, (the father,) it contains the clear and explicit *reservation*, " to be subject to his debts." If not subject to his debts, then it was fraudulent as to the said Joseph and his creditors, and if fraudulent, *being executory*, it will not be enforced. *Payne vs. Bruton*, 5 *Eng.* 60; *Nellis vs. Clark*, 20 *Wend.* 24; 4 *Pick.* 314; 11 *Wheat.* 258. The authorities on this point are too well known and recognized to comment on. Property derived fraudulently, an infant, no more than an adult, can derive benefit from it. *McPherson on Infants*, (*Law Library*,) *p.* 313, *vol.* 16; 14 *Vesey* 288.

Aside from the objections apparent on the face of the deed— it was made by Milton, to defraud the creditors of Joseph, his father. Of this, the proof is positive. It is in testimony that the deed was made expressly to *elude* or *evade* creditors of Joseph; and whether made directly or indirectly, by the real or

assumed owner, it is void even at common law.  *Dardenne vs. Hardwick*, 4. *Eng.* 486; *Wheaton vs. Sexton*, 4 *Wheat.* 503; 6 *Eng.* 478.

The Court erred in refusing to instruct the jury on the statute of five years peaceable possession.  Executors and administrators are bound to plead the statute.  *Rogers et al. vs. Wilson et al.*, 13 *Ark.* 512.

Appellant held from January, 1841, to April, 1847, when the slave was sold under executions issued on two judgments, from Union Circuit Court, recovered on two duly certified transcripts of judgments obtained in the Superior Court of Coosa county, Alabama, in 1838, about the time the slave, Sam, was run to Arkansas, from that county.  Said slave was re-purchased by Joseph, in October, 1847, who held him thence to the day of his death, in July, 1853, and adversely as the evidence clearly shows, *Dodd vs. McCraw*, 3 *Eng.* 101; 3 *J. J. Marsh.* 279, was taken from appellant, in January, 1855, by writ of replevin.

The Court *erred* in not permitting defendant below to plead the statute of five years: and in sustaining demurrer to defendant's third plea: and in not permitting appellant to show that appellee claimed the slave in question, (with other property,) under a *quasi will*, made by Milly Holloway, in the lifetime of the said Joseph, her husband, and, in which she, Milly, attempts to give the said slave to the appellee, jointly with her two younger sisters, in whom, defendant below pleads property.

CARLETON, for the appellee.

Mr. Chief Justice ENGLISH, delivered the opinion of the Court.

*Replevin* in the detinet, brought by Alcy Dunn, against John B. Anderson, in the Union Circuit Court, for the recovery of a negro man named *Sam.*  Action commenced 20th January, 1854.  Defendant pleaded, at June term, 1854:

1. Non detinet.

2. Property in defendant as executor of Joseph Holloway.

3. Property in the *succession* of Milly Holloway.

4. Property in Thomas Jones.

5. Property in Mary W. and Nancy A. Holloway.

Demurrer sustained to the third plea, and issues taken to the others.

Defendant also filed a notice that he would prove upon the trial, among other things, that his testator, Joseph Holloway, by his wife Milly, purchased *Sam* in 1847, for a valuable consideration.

The cause was submitted to a jury, and not agreeing upon a verdict, they were discharged.

. At the Sept. term, 1854, the defendant obtained leave to amend his fourth plea, and the cause was continued.

At the April term, 1855, defendant withdrew his fourth plea, and filed an additional one, which, on motion of the plaintiff, the Court struck out. This plea does not appear in the record. The defendant also offered to waive his exception to the opinion of the Court sustaining the demurrer to his third plea, and to file an amended plea, which the Court refused. The cause was again submitted to a jury, who could not agree upon a verdict, and were discharged.

At the April term, 1856, the defendant, upon a showing, moved for leave to file a plea of the statute of limitations, (five years,) which the Court refused, and he excepted. The cause was submitted to a jury, and verdict and judgment for plaintiff.

During the progress of the trial, defendant excepted to several decisions of the Court and appealed.

1. The third plea, to which the Court sustained a demurrer, is as follows: " And for a further plea, etc., the said defendant says that at the time, etc., the said negro boy Sam, was the property of the regular succession of Milly Holloway, late of said county of Union, deceased, and not the property of the said plaintiff; and of this he puts himself upon the country.

The demurrer appears to have been sustained to the plea on the ground that it averred the property to be in the " succes-

sion of Milly Holloway," generally, without naming any particular person, etc.

The allegation of property in the succession of Milly Holloway, was matter of inducement to the traverse of the plaintiff's title, and not an issuable allegation. *Robinson vs. Calloway*, 4 *Ark.* 101; *Rogers vs. Arnold et al.*, 12 *Wend.* 30. The traverse of the plaintiff's title was the gist of the plea. *Ib.*

Under an issue to the plea, the burthen of proof would have been upon the plaintiff, to show title in herself, and if she had made a prima facie case, the defendant might have shown, by way of rebutting evidence, that the title was in himself, or any third person. He would not have been confined to the succession of Milly Holloway, even if one or more persons had been named in the plea as having succeeded to her right of property in the negro.

A plea alleging the property to be in a fictitious person, traversing the allegation of property in the plaintiff, would doubtless be good.

The action in this case being in the detinet, the third plea amounted to nothing more than the general issue, (non detinet,) but it was good upon demurrer. *Davis vs. Calvert*, 17 *Ark.* 85; *Lincoln vs. Willamowicz*, 2 *Eng.* 378; *Lawson et al. vs. State*, 5 *Ib.* 28.

But the defendant could not possibly have been prejudiced by the judgment of the Court sustaining the demurrer to the plea, because, under the general issue, or under either of the other pleas, (each of which traversed the plaintiff's title,) he could have introduced any evidence upon the trial that would have been admissible under the third plea. See *Pelham vs. Page*, 1 *Eng.* 536; *Vaden et al. vs. Ellis*, 18 *Ark.* 359.

2. At the trial term, on motion of the plaintiff, the Court struck out the notice filed by the defendant, at a previous term, stating what he expected to prove upon the trial, and the defendant excepted.

The substance of the notice was, as above shown, that defendant would prove upon the trial, among other things, that

his testator, Joseph Holloway, by his wife Milly, purchased *Sam* for a valuable consideration, in 1847. This the defendant had the right to prove, if he could, under the issues made up in the cause, without giving any such notice. The filing of the notice was a gratuitous act on his part, producing an unnecessary item of cost. He was in no way prejudiced by the Court striking it from the files.

3. The plea of the statute of limitations which the defendant asked, and was refused leave to file, at the trial term, was, in substance, that he came into possession of the negro *Sam*, and held him when the suit was commenced, as the executor of Joseph Holloway, deceased; who, for five years next before his death, etc., held adverse peaceable possession of said slave, etc.

Passing over any question as to the sufficiency of the showing made by the defendant for leave to file the plea of limitation, after the cause had been at issue for several terms, (see *State vs. Jennings*, 5 *Eng.* 443) the defendant could not have been prejudiced by the refusal of the Court to permit the plea to be filed. The plea was based upon the act of 19th of December, 1846, (*Dig.*, *chap.* 153, *Art.* 1, *p.* 943,) which is a statute of title as well as of limitation. *Sadler et al. vs. Sadler*, 16 *Ark.* 642; *Pryor vs. Ryburn*, *Ib.* 693; *Machin vs. Thompson*, 17 *Ib.* 202; and the defendant had the right to prove, under the general issue, or under either of the other pleas, which traversed the plaintiff's title, that his testator, or himself, or any one else, had acquired title to the slave by adverse possession, and lapse of time.

4. Upon the trial, the plaintiff produced and offered to read in evidence, an instrument purporting to be a deed of gift from Milton A. Holloway, to herself, etc., with an endorsement of the filing thereof in the clerk's office of the county of Union, as follows;

"STATE OF ARKANSAS,⎫
    COUNTY OF UNION.   ⎬

Know all men by these presents, that I, Milton A. Holloway, of the State and county above written, do this day, for and in

consideration of the natural love and affection, which I have for my beloved brother, Green Holloway, and my beloved sister, Alcy J. Holloway, both of the State and county above written, give and bequeath to them the following named property, to have, and to hold, as their own right and property, for their own special use and benefit forever and ever, to be received, managed and controlled by our beloved father, Joseph Holloway, of said State and county, for them, during his life, or until they shall both attain the age of twenty-one years, and in case of the death of either of said children, the property shall descend as follows: If the son, the property of him to our father, Joseph Holloway, as before mentioned, if the daughter, the property to descend to her mother, Amelia Holloway, to be by them disposed of as they may think proper, but subject to be sold for either of their debts—the said Joseph Holloway or Amelia—Namely: To my beloved brother, Green Holloway, I give and bequeath a certain negro boy, by name called Willis, aged about twelve years; also, a certain yellow cow of my stock.

To my beloved sister, Alcy J. Holloway, I give a certain negro boy, by name called *Sam;* also, a certain black cow of my stock, said cow having a white forehead.

This given under my hand and seal, this 9th day of December, 1840, in the county of Union and State above written.

MILTON HOLLOWAY, [SEAL.]"

"Assigned and presented in the presence of

WM. D. YARBOROUGH, [SEAL.]

JAMES YARBOROUGH, [SEAL.]"

Upon which instrument was the following endorsement:

" Filed in my office this 19th day of January, A. D., 1841.

A. G. HILL, *Clerk,*

Per A. C. H. HILL."

In connection with the offer to read the instrument in evidence, the plaintiff made the following proof:

*James Yarborough* testified, that he was acquainted with the parties, and knew the negro *Sam.* He was at Milton Hollo-

way's in Union county, in December, 1840, and saw him sign the deed, in presence of Joseph Holloway, the father of said Milton, and of the plaintiff, Alcy Hollowoy. That witness and Wm. Yarborough, since deceased, signed the deed as attesting witnesses, in the presence of said Milton and Joseph. That *Sam* was in possession of Milton Holloway about that time, and had been for about two years. Witness thought, but was not certain, that *Sam* was delivered to Joseph Holloway, with the deed, but did not recollect seeing Sam on that day. He was quite a young negro; and shortly afterwards witness saw him at Joseph Holloway's.

*G. H. Pinckney* testified, that he wrote the deed at the request of Milton and Joseph Holloway, and Joseph told witness that Milton was going to give the boy Sam to the plaintiff.

*John A. Mitchell* testified, that he was intimate with the Holloways. Saw the deed in the hands of Joseph, at his house, some time in December, 1840, or January, 1841. Sam was there, and Joseph told witness that Milton had given Sam to the plaintiff, and that he, Joseph, had the deed and the negro; and that Sam was the identical negro in controversy in this suit. Witness was the son-in-law of Joseph.

Plaintiff also proved that she was the daughter of Joseph Holloway, and the identical donee named in the deed. She was his youngest child at the time, and about seven or eight years old when the deed was made. That she lived with her father, and left there in the fall of 1852, and went to Louisiana.

Upon the above proof, the plaintiff proposed to read the deed to the jury, to which the defendant objected, on the grounds, as stated in the bill of exceptions, that the deed showed upon its face that it was insufficient in law; that it had never been duly acknowledged and recorded, and was without consideration—but the Court overruled the objection and permitted the deed, and the endorsement, to be read in evidence.

Upon the proof introduced in connection with the deed, the Court did not err in permitting it to go to the jury. The intention of the donor, as plainly manifested upon the face of the

42

instrument, was to give the slave *Sam* to his sister, the plaintiff, with a provision, that in case of her death, the negro should go to her mother absolutely, and Joseph Holloway, the father of both the donor and donee, was made a trustee to receive, manage, and control the slave, for the benefit of the donee, during her life, or until she attained the age of twenty-one years.

The evidence introduced in connection with the deed, conduced to prove its execution and delivery. The delivery to the trustee was sufficient. 2 *Greenl. Ev.*, *sec.* 297; *Dyer et al. vs. Bean et al.*, 15 *Ark.* 519.

The evidence also conduced to prove that the slave was delivered to the trustee, when the deed was executed. It was not necessary to record the deed unless the donor had remained in possession of the slave. *Dig.*, *chap.* 153, *Art.* 2, *p.* 944; *Blagg vs. Hunt r*, 15 *Ark.* 246.

The donee being the sister of the donor, natural love and affection was a good consideration. 1 *Parsons on Contracts*, *p.* 357; 2 *Black. Com.* 297.

This disposes of the objections taken in the bill of exceptions to the introduction of the deed.

5. *John A. Mitchell* testified, on cross-examination, (after the deed was read in evidence,) that *Joseph Holloway* told him, about the year, 1838, that he had sold all of his negroes, including *Sam*, to one Alford, and Alford had sold them to Milton Holloway, in Coosee county, Alabama, about the year 1838.

The bill of exceptions states that " defendant offered to prove that said deed was fraudulent and void; that it was made with intent to hinder, delay and defraud Joseph Holloway's creditors. That said Joseph, if ever he assented to the making of the deed, did it for the purpose of getting possession of the property therein mentioned, as his own rightful property, to get it out of the possession of the said Milton, who had, before that time, appropriated much of the said Joseph's property to his own use, etc.

" And the defendant further proposed to prove that the said Joseph had peaceable possession of said negro till 1847, when

he was levied on and sold by the sheriff of Union county, as the property of said Joseph, to satisfy two executions issued from the Circuit Court of said county, on two judgments of said Court, obtained before Allen Powell, against the said Joseph; which judgments were founded upon two duly certified transcripts, between the same parties, obtained in the Superior Court of Coosee county, Alabama, on the 24th of September, 1838, said execution sale was on the 5th April, 1847; and thereat one Thomas Jones became the purchaser of the said negro boy *Sam* with others. That afterwards, on the 6th day of November, 1847, the said Thomas Jones sold *Sam* and others, for an adequate and valuable consideration, to Milly Holloway, wife of the said Joseph, and delivered to them the said negro, with others; and that the said Milly and Joseph held peaceable adverse possession of said negro Sam from said 6th day of November, 1847, till their death. To all which testimony the plaintiff objected, which objection was, (except as to all that was said as to adverse possession), by the Court, sustained, and the proposed testimony rejected; and the defendant excepted, etc.

Voluntary conveyances, made in fraud of the rights of creditors, are valid as between the parties, their heirs, executors and administrators, etc. 1 *Story's Eq., sec.* 371. If the contract is executory, the Court will not help a party to the fraud to enforce it. *Payne vs. Bruton,* 5 *Eng. R.* 53; *Britt vs. Aylett,* 6 *Eng.* 475. If executed, the Courts will not relieve the parties. *Ib.*

Here the contract was executed, (2 *Black.* 443.) The grantor, it appears, delivered the slave to the trustee with the deed. When the suit was brought, the plaintiff was, no doubt, of age, the trustee was dead, and the period stipulated in the deed of gift for the continuance of the trust had expired. If Joseph Holloway, the trustee, had been living, and the suit brought against him, he would not have been heard to set up that the deed was made to defraud his creditors. The record shows that the defendant came into the possession of the slave as the executor

of Joseph Holloway, and claimed him in no other right. He could not therefore be heard to set up the fraud of his testator, to avoid the deed. *Eubanks vs. Dobbs et al.* 4 *Ark.* 73; *Jordan vs Fenno,* 13 *Ark.* 593; *Slocomb, Richards, & Co. vs. Blackburn, et al.* 18 *Ib.* 319.

The deed was executed in 1840. The defendant proposed to prove that in 1847, while the plaintiff was yet a minor, the trustee permitted the slave to be sold under execution as his property, bought by Jones, and conveyed to the wife of the trustee.

It certainly was not seriously supposed that the trustee, or his wife, acquired any title to the slave by such sale and transfers, or that they could have been made the basis of such an adverse holding as to entitle the trustee to the benefit of the statute of limitation as against the minor *cestui que trust,* who had no right of action to recover possession of the slave until the death of the trustee, or until she attained to the age of twenty one years, under the provisions of the deed. *Harriet et al. vs. Swan &. Dixon,* 18 *Ark.* 497.

6th. In the further progress of the trial, W. C. McKenzie, a witness for the defendant, testified that the negro *Sam* was born the property of Joseph Holloway, while he lived in Antaga county, Ala., about the year 1835. That shortly afterwards, he removed from thence to Coosee county; and witness did not see *Sam* any more until he saw him in the possession of Milton Holloway in Arkansas, about the first of the year, 1839. That Joseph was living in Coosee county, when *Sam* was brought to Arkansas in 1838. That Milton told witness in that year, that he had run all of his father's negroes to Arkansas, where he had got a place, and wanted to get his father there, and settle him. That he (Milton,) had come back to Alabama, to get some money, but found his father's *effects all attached.*

The Court, upon the objection of the plaintiff, ruled out so much of the statement of this witness as related to the *effects being attached,* and defendant excepted.

The defendant offered to prove by the same witness that at

the time of the removal of the negroes of Joseph Holloway, by Milton Holloway, to Arkansas, Sam being among them, the said Milton left the said Joseph greatly involved in debt in Alabama, and nothing to pay with. That Milton's right to *Sam*, and others, was a pretended right set up by him to keep his father's creditors off of the property, and secure his father the use of the property during his life—which the Court, upon the objection of the plaintiff, ruled out, and the defendant excepted.

The defendant proved, by the same witness, that Joseph Holloway had possession of Sam early in 1841, and held possession of him from that time until his death, (19th July, 1853,) except, perhaps, some few months, and exercised ownership over him in all respects as his own property.

That portion of the testimony of this witness, which the Court ruled out, was a further attempt on the part of the defendant to prove that the deed of gift was a contrivance, on the part of Milton and Joseph Holloway, to defraud the creditors of the latter, which, as above stated, it was not competent for the defendant to do. He did not occupy a position which would warrant him in attacking the deed on such grounds.

7. T. B. Gordon, witness for defendant, testified that he was intimate in the family of Joseph Holloway from the year 1847, until his death, in July, 1853; and that he exercised acts of ownership over *Sam*, and spoke of him at all times as of his own property, and witness knew nothing to the contrary. The will probated by defendant was made by said Joseph shortly before his death, and *Sam* was on his premises at the time. The plaintiff married in January, 1849, moved from her father's house, and lived apart from him about one year. She carried no negro with her from her father's at the time. She returned to her father's at the expiration of the year, and lived as a member of the family. She married again in the fall of 1852, and moved off from her father's, but did not take the boy *Sam* with her. He remained at her father's. She was a widow when her father died, but did not return to his house until after his

death. She was about seventeen or eighteen years of age when she first married.

Defendant then proposed to prove that Amelia Holloway, wife of said Joseph, shortly before her death, made a will, bearing date 19th May, 1851, in which she attempts to bequeath *Sam*, with other property, to the plaintiff, by her then name of Alcy J, Livingston, together with Mary W. and Nancy A. Holloway: the two last named being the persons mentioned in defendant's 5th plea. That in January, 1854, just before the bringing of this suit, the plaintiff's attorney filed a copy of the said will, with proof establishing the loss of the original, in the office of the clerk of the Probate Court of Union county, and moved the Court to admit the same to probate, for the benefit of the plaintiff—which testimony the Court, upon the objection of the plaintiff, excluded, and the defendant excepted.

If the defendant had proposed to prove further, that the will was in fact admitted to probate, and that the plaintiff had claimed the benefit of the legacy thereby bequeathed to her, it might have become a question of some interest, whether her election to take under the provisions of the will, cut off her right to assert title to *Sam* under the deed of gift. See 1 *Jarman on Wills*, 386; 2 *Story's Eq. chap.* 33.

But it is not perceived that what the defendant did propose to prove could have been of any legitimate service to him, if the Court had admitted it.

8. In the further progress of the trial, it was admitted that defendant was the executor of the will of Joseph Holloway. That *Sam* was at his house when he died, and was taken out of the possession of the defendant, by the sheriff, under the writ of replevin issued in this case. Plaintiff also proved the value of Sam, his hire, and demand and refusal before suit.

The defendant read in evidence the deposition of Milton Holloway, in substance as follows:

Some time prior to 1840, Joseph Holloway, the father of defendant, became indebted to him in about the sum of 1,300, in discharge of which he purchased of his father two negroes

Willis and *Sam*, and took a bill of sale therefor. Deponent took and held possession of the negroes, under the purchase, which was *bona fide*. Some time during the year, Jas. Holloway, brother of deponent, took from the possession of his father a negro boy named Alph, which deponent had previously owned and given to his father. The feelings of his father were very much annoyed at having Alph so taken from him: and while he was so annoyed, in the latter part of the year 1840, deponent told him, to quiet and satisfy his feelings with regard to the loss of the boy Alph, that if he would say no more about it, deponent would give him the negroes Willis and *Sam*. To which he replied that there were some old security debts against him, and that he could not hold them in his own name; and at his request, deponent gave them, by deed of gift, to Green Holloway and Alcy J. Holloway—Willis to Green, and Sam to Alcy—both in the same deed.

Plaintiff admitted that Mary W. and Nancy A. Holloway were residuary legatees under the will of Joseph Holloway: and that she herself was provided for in the will.

The above being all the testimony offered or introduced by the parties upon the trial, the Court, at the request of the plaintiff, and against the objection of the defendant, instructed the jury as follows:

" 1. If the jury believe from the testimony that the title to the boy *Sam* was in Milton Holloway, the grantor in said deed, at the making of the same, and he gave said slave to said plaintiff, as in said deed stated, and that Joseph Holloway received said slave Sam, as the property of the plaintiff, she being his child and living with him, and a minor, that Joseph Holloway's possession was her possession.

" 2d. If the jury believe from the testimony that the title to said slave *Sam*, at the date of said deed, was in Joseph Holloway, and he permitted Milton Holloway, with his knowledge and assent, to give the slave Sam to the plaintiff, and he received him under such gift, as the property of plaintiff, and she being a minor child and living with him, then Joseph Hollo-

way's possession was her possession, and they may find for the plaintiff.

"3d. If the jury believe from the evidence that Milton Holloway had possession of said negro, and that Joseph Holloway admitted his title, and that Milton gave the same to plaintiff, the law is with the plaintiff, and they will find for her."

The defendant moved for the following instructions:

"1. If the jury believe from the evidence that defendant had and held peaceable adverse possession of said negro Sam for five years without any deed or will duly proven by two witnesses, or acknowledged by the grantor and recorded within six months, in the county where the property was, or where one of the parties resided, such possession gives him a good title under the statute: and that the possession of Joseph Holloway is the possession of defendant.

"2. If the jury believe from the evidence, that at the commencement of this suit, the right of possession of said negro Sam was not in the plaintiff Alcy, then they may find for the defendant.

"3. If the jury believe, from the evidence, that defendant's testator, Joseph Holloway, assented to the making of said deed for the purpose of getting peaceable possession of his own rightful property out of the possession of the said Milton, he is not bound by such deed, unless it had been duly acknowledged and recorded.

"4. If the jury believe, from the evidence, that the title to the said boy Sam was in Joseph Holloway at the date of said deed of Milton Holloway, under which plaintiff claims, and that Joseph Holloway was present, assenting to the execution of the deed, and that the same was executed with the intent to hinder or delay creditors, then said deed conveyed no title to the plaintiff in the boy Sam."

The Court gave the 2d, but refused to give the 1st, 3d and 4th of these instructions, and defendant excepted.

Joseph Holloway died in July, 1853. The plaintiff, under the provisions of the deed of gift, had no right of action for

the slave until his death, or until she was twenty-one years of age, which age she perhaps did not reach until about the time of his death. She commenced this suit 20th January, 1854, probably within less than a year after her right of action accrued.

The evidence conduces to show that the title to the slave and the possession were in Milton Holloway when the deed of gift was made, and that Joseph Holloway accepted the deed, and took possession of the slave under it. It perhaps was a contrivance to defraud his creditors, but this, as we have above seen, the defendant was not in a position to assert. The legal result of the evidence is, that he took possession of, and held the slave under the deed, as a trustee, for the benefit of the plaintiff. His possession, therefore, as the Court instructed the jury, at her instance, was, in contemplation of law, the possession of the plaintiff.

The evidence conduces to prove that from the year 1847, until his death, Joseph Holloway spoke of, and treated Sam as his own property. But whatever may have been his conduct, or declarations, in reference to the slave, the plaintiff having no right of action until after his death, etc., he holding as her trustee under the deed, and there being no proof that she had any knowledge of his asserting an adverse claim to the property, there was no foundation for the first instruction moved by the defendant and refused by the Court. See *Harriet et al. vs. Swan et al.*, 18 *Ark.* 498.

The 3d instruction moved by the defendant is not consistent with the testimony of Milton Holloway, the defendant's own witness. But if there had been evidence, upon which to base the instruction, we know of no principle of law to warrant it.

If Joseph Holloway was rightfully entitled to the possession of the slave, and Milton Holloway wrongfully withheld him, the law prescribed several ample and simple remedies by which the former could have recovered him from the latter, without the necessity of resorting to the false pretence of consenting to the execution of the deed of gift, and insincerely accepting a

trust, in order to get possession of the negro. The law countenances no such deceit.

It has been sufficiently indicated above that the Court did not err in refusing the 4th instruction moved by the defendant.

The judgment is affirmed.

Absent, Mr. Justice HANLY.