## JACKSON VS. BOB.

On the trial of a petition for freedom by a negro the presumption is against him, that he is a slave, that being the condition of the negro race generally in this State; and he must prove his right to freedom—either that he was born free, or had been emancipated according to law.

The declarations of the master, that the slave, upon arriving at a certain age, was to be appraised, and to be liberated after working out his appraised value, are not competent evidence, to establish the emancipation of the slave, in a suit for freedom either against the master or one holding under him.

A contract to set a slave free at a future day, upon certain conditions, whether made with the vendor upon a sale and purchase of the slave, or with the slave himself, is an executory contract for emancipation; and a specific performance of it cannot be enforced by the slave in a court of law or equity.

*Appeal from the Circuit Court of Sevier county.*

The Hon. SHELTON WATSON, Circuit Judge.

PIKE & CUMMINS, for the appellant. Wherever the law prescribes the form or mode of manumission—that form and mode must be followed, even where there are no negative words, for-

bidding a resort to other modes. *McCutchen vs. Marshall et al.* 8 *Pet.* 238; *Winney vs. Cortwright*, 3 *Marsh.* 403; *Bazzi vs. Rose and her child*, 3 *Mart. La. R.* 149; 7 *La. R.* 135; 14 *J. R.* 53; *Cocke vs. Cocke*, 3 *Litt.* 236; *Beall vs. Joseph, Hardin's R.* 51; 5 *Martin's R.* 494; 4 *Mart. La. R.* 212; *Negro James vs. Gaither*, 2 *Har. & John.* 176; 6 *Munf.* 191; 1 *Rand.* 15; *Bibb's R.* 57.

As will be observed by the questions settled in the various cases cited, there must be a *strict* compliance with *the law and form prescribed*, before manumission can occur. This proves the right to manumit does not exist by law.

Besides the general principle upon the subject, the constitution and statutes (*Tit. Eman., sec.* 1, *p.* 66; *Rev. St. ch.* 63, *sec.* 1, 2,) conclusively show that these rules must prevail, in cases arising under our law; *Campbell et al. vs. Campbell et al.*, 13 *Ark. R.* 513.

Emancipation can only exist in consequence and in virtue of a consummated—a perfect instrument, establishing freedom, and requiring no further act to be done. A contract to manumit at a future time—an agreement to manumit on certain *conditions* is a mere nullity.

The reason on which this principle is founded is clear and fully shown by the authorities; *Patton vs. Norris*, 15 *B. Monr.* 575; *Stevenson vs. Singleton*, 1 *Leigh* 72; 13 *B. Mon.* 347–8, etc.

Similar grounds are taken in *Cuppy as. Castillon*, 5 *Mart. La. R.* 494. The *freedom* must be created, *per se*, by the instrument. If not, the slave has no right to or interest in the contract. He is incompetent to do any act for himself—to furnish or pay any consideration.

In *Beall vs. Joseph, Hard. R.* 51, it was held that a contract or promise to manumit, could be of no avail. In *Will vs. Thompson*, cited there, it was held that a written contract by a purchaser to manumit, at a particular time, did not authorize the negro to sue at law. So in *Cooke vs. Cooke*, 3 *Litt.* 236.

Manumission is no contract, nor in the nature of contract. It is a mere benevolence. 14 *J. R.* 324; 19 *J. R.* 53.

Every attempt to extend to a slave *positive rights*, is an attempt to reconcile inherent contradictions. 2 *Strobh.* 41; 13

*Ala.* 192; 9 *Gill. & John.* 19; 1 *Rich.* 196; *Dudley's S. C. R.* 220; 2 *Rich.* 424; 6 *Hum.* 294. A slave cannot enforce a contract between free white persons, for his emancipation. 8 *B. Monr.* 629, 548; 1 *Brev.* 273.

Only in the mode pointed out by law can a slave get his freedom, 5 *Smed. & Marsh.* 609.

Our constitution and statutes tolerate no contracts for freedom. That is not one of the modes provided for emancipation. They are absolutely void. 11 *Leigh* 624; 13 *Ark.* 519; *Smith on Con.* 123.

Where a negro *is held as a slave*, we submit that no oral declaration as. to freedom in future, is admissible at all. No such declarations can create freedom however often or solemnly made. The law does not tolerate such evidences of freedom. It declares what shall be evidence to prove manumission, and excludes all other.

It is ridiculous to claim that such declarations by successive holders may be given in evidence to prove freedom—under our constitution and statute. They never ought to be admitted except as against the party making them; and then only to prove the *existence* of the *very act* of *emancipation*, not general declarations about freedom.

Gallagher for the appellee. Our Circuit Courts, under the powers conferred upon them by statute, (*Dig. ch.* 74,) in relation to slavery and emancipation, exercise a jurisdiction co-ordinate with the subject-matter, subject to no rules and regulations except such as are laid down by the constitution or statutes, or common usage of this State, and have all the powers, both equitable and legal, necessary to carry into effect, and give efficacy to any order, judgment or decree that may be made, and to afford a full, adequate and complete remedy: and may therefore compel the execution of any deed or other evidence in writing that may be necessary in perfecting a decree for freedom.

The covenant executed by Hamilton to Brown, was for Bob's benefit, as sufficiently appears by the contract and proof; and

Hamilton was bound by that covenant to execute a deed of manumission in such form as the statute may require to make it a valid and perfect emancipation. See *Baker vs. Tabor*, 7 *La. Ann. Rep.* 556; *Vail et al. vs. Bird*, 6 *La. Ann. Rep.* 223; *Fanny vs. Bryant*, 4 *J. J. Marsh.* 368; *Isaac vs. Wirt*, 6 *Rand.* 652; *Stiles vs. Richardson*, 4 *Yeates* 652; *Greer vs. Huntington*, 2 *Root* 264; *State vs. Peall, Cox* 4; *Case of Tom*, 5 *J. R.* 365; *Cato vs. Howard*, 2 *Har. & John.* 325; *State vs. McDonald, Cox* 332; *Henriette vs. Arroys, Sup. Ct. La. Dec. T.* 1854.

The Court correctly allowed the admissions of Brown and Hamilton, whilst they had Bob in their possession, touching his freedom. Declarations of a master at the time he owned the slave, are admissible in evidence. *Garret vs. Sam*, 5 *Munf.* 572.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 21st of August, 1851, *Bob*, a negro, commenced an action of trespass, under the statute, for his freedom, against Isaac N. Jackson, in the Sevier Circuit Court. The cause was submitted to a jury, at the August term of 1853, verdict in favor of the plaintiff, and judgment of the Court that he be liberated, etc. Pending the trial, the defendant, Jackson, took several bills of exception to decisions of the Court, and appealed.

The evidence introduced by Bob upon the trial to establish his freedom, was, in substance, as follows:

*George A. Brown*, whose deposition was taken, deposed that he was the grandson of Elliott Brown, who died in Mason county, Virginia, about the year 1825; and who, at the time of his death, was the owner of *Bob*, whose age at that time was about ten or twelve years. On the division of Elliott Brown's estate, Bob fell to witness. In the spring of 1834, witness took him to Arkansas, and disposed of his claim to his services to Robert Hamilton, of Sevier county, for $600 in goods, at a very dear rate, after informing Hamilton how he came by him, and what was the term of his service. Witness conveyed his claim in the negro to Hamilton, by an instrument of writing, providing in substance, as near as he could recollect, that Bob, after arriv-

ing at the age of twenty-five years, and then working out his appraisement, was to be free. Hamilton also gave witness an instrument, by which he promised and bound himself to have Bob appraised by disinterested persons, when he arrived at twenty-five years of age, and after he worked out his valuation, to liberate him. It was handed to the county clerk to be recorded, etc. Witness did not intend any one to infer from any words, acts or deeds of his, that Bob was a slave for life.

A copy of the instrument last referred to by the witness, was produced at the trial, by the defendant, and read in evidence by the plaintiff: and is as follows:

"Know all men by these presents, that I, Robert Hamilton, do bind myself, my heirs, executors or administrators, to have a certain negro boy named Bob, purchased of Geo. A. Brown, the 15th of February, 1835, appraised six years after date by disinterested persons, and when said negro shall have worked out the sum he may be appraised to, to set him free, and in case of non-compliance with these conditions, I bind myself, my heirs, executors or administrators in the sum of six hundred dollars—this 15th February; 1835.

R. HAMILTON, [seal.]"

The Court permitted this instrument, as well as the deposition of Brown, to be read to the jury against the objection of defendant.

*Layne* testified that he had known *Bob* since the year 1834 or 1835. Geo. A. Brown then had him in possession, and brought him to the house of witness in Sevier county. Bob then appeared to be between fifteen and eighteen years of age.

Plaintiff then proposed to prove by witness the declarations of Brown whilst he had him in possession, in regard to his age condition as to freedom or slavery, the title of Brown to him, and whether he held him as a slave for life, or only for a term of years, or conditionally to be free on the happening of certain events, etc. The defendant objected to the competency of all such declarations of Brown, but the Court overruled the obtion.

Witness then stated, that, after Brown brought Bob to Ar-

kansas, he had heard him say that Bob was a slave until he arrived at twenty-one years of age, and after that he was to work out or be hired out, until he paid for himself, which Brown estimated would require him to serve until he was twenty-six years of age. Brown lived with witness about six months in the year 1834, or 1835, and, during this time, frequently made the above statement to witness and others. Witness had heard Hamilton say, shortly after he purchased Bob of Brown, that he had not bought him as a slave for life, but had bought him to work as a slave until he was twenty-one years of age, after which he was to work out his value and then be free. Bob was afterwards in posession of Hamilton until his death. Bob's hire would have been worth $150 per annum.

The declarations of Hamilton were admitted against the objection of defendant.

On cross-examination, the witness further stated, that Brown said, in the conversations above referred to, that Bob was left to him by his grand-father's will, and by it was to be free on the terms above stated. Witness never heard Brown say there was any other right or reason for Bob's not being a slave for life, or for his being entitled to his freedom on the terms stated, than by virtue of the provisions of said will.

Whereupon the defendant moved the Court to exclude all the declarations of Brown, and to require the will to be produced, but the Court overruled the motion, etc.

*Foran* testified that Hamilton was in possession of Bob from the time he purchased him of Brown until the year 1845 or 1846, when Hamilton died. Soon after his death, witness saw Bob in possession of defendant, and he held him thereafter as a slave until this suit was commenced. Whilst witness was clerk of Sevier county, he was handed the original of the instrument executed by Hamilton to Brown, above copied, to be recorded, and was told that Hamilton would pay for recording it; but on the next day Hamilton told him not to record it, that he would not pay for it. Witness kept the instrument until defendant got Bob, after which, defendant asked him for it; witness gave it to him, and he never returned it. When witness first saw

Bob in 1837 or 1838, he appeared to be 18 or 19 years old. His hire from the year, 1840 would average $150 per annum. Hamilton several times stated to witness the terms on which he had purchased Bob. The terms were as recited in the instrument.

The first time witness saw Bob after the death of Hamilton, he was in possession of defendant; who said he had got him of Brittin for fees due him as sheriff. Bob was worth in 1836–7–8 $600 or $700. Negroes were then low. After Hamilton's death, his negroes were brought to the court-house of Sevier county, and sold under .execution. Witness thought Bob had run off to Texas, and was not present at the time. Hamilton's estate was insolvent.

Hamilton's statements to this witness were admitted against the objections of defendant, etc.

*Turrentine* testified that he knew Bob in the possession of Hamilton from the year 1840, to the last of January or first of February, 1846, when Hamilton died. Witness married his daughter, in 1844. She wanted her father to give her Bob, but he said " he will do you no good, as by right he ought to be free." Bob ran away in 1845, and when brought back Hamilton whipped him for it, and, while whipping him, said to him, that though " Brown said you were entitled to your freedom, I will not set you free, and will show those legs that they shall not run away from me." After Hamilton's death, defendant had Bob in possession before witness knew any one else to have him. Saw him first in his possession in 1846 or 1847. He held and treated him as a slave from that time until this suit was brought. Witness heard Hamilton say, while he was in possession of Bob, that he had bought him of Brown, and was to keep him until he was twenty-one years old, after which Bob was to work out his valuation and be free. Bob had run away three times; once from Hamilton, once from his widow, and once from defendant. Was gone but a short while each time.

It was further proven that Bob was sold under execution, as the property of Hamilton, at the October term of the Sevie Circuit Court 1845, and bought by Brittin and Royston.

After the testimony was closed by the plaintiff, the defendant moved to exclude the whole of it, and every part thereof, from the jury, as being incompetent to establish Bob's right to freedom; but the Court overruled the motion.

At the instance of plaintiff, the Court instructed the jury as follows, against the objection of defendant:

" 1st. If the jury believed said negro was transferred from Geo. A. Brown to Hamilton, and Jackson obtained his title from Hamilton, or from one who purchased him when sold under execution as Hamilton's property—then, any statements of Brown made in regard to his title, whilst he held the negro, or by Hamilton, while he held him, are competent evidence in this case.

2. That the only questions in this case, for the determination of the jury, are: 1st, whether said negro Bob is a slave or a freeman, and 2d, whether (if a freeman) he was held in slavery by Jackson at the institution of this suit, and the jury will determine these questions, by weighing and considering the testimony given in this case."

The defendant moved the following instructions:

" 1st. Where a negro sues for freedom, the presumption of law is against him, and the jury must find him to be a slave, unless he prove to the satisfaction of the jury, he was legally entitled to his freedom at the date of the institution of the suit.

2d. That the writing given in evidence dated 15th February, 1835, executed by Robert Hamilton, as an instrument of emancipation is void, and confers no right on the negro Bob to his freedom in law.

3d. That, in this State, a negro can only be emancipated by last will and testament, or some other instrument in writing, under the hand and seal of the party, attested by two witnesses, and proved in the Circuit Court of the county where he resides, or acknowledged by the party in the same Court.

4th. That even though Hamilton had manumitted Bob by a formal and legal instrument, yet, if his estate were insolvent, said negro could have been sold to pay his debts, existing prior

to emancipation, and treated as a slave for life, unless the negro was entitled by law to his freedom, independently of Hamilton's act of emancipation.

5. That said instrument of date 15th of February, 1835, if in any event it confers an equitable right in Bob to his freedom, could only be enforced and made available to that end, in a Court of chancery, wherein alone could the execution of the necessary instrument of emancipation, stipulated for in said instrument of 15th February, 1835, be compelled from the party to execute it.

6. That said instrument of 15th February, 1835, could have no legal binding force upon any one purchasing said negro from Hamilton.

7. No mere contract to emancipate can at law be recognized as an emancipation of a slave.

8. If the instrument of 15th February, 1835, is considered as the foundation of Bob's right to freedom, it does not confer any legal right to freedom on Bob, and his right to freedom cannot be consummated, so as to be recognized at law, under said instrument, until and by virtue of a subsequent and direct instrument of emancipation executed according to law.

9. That said writing of Hamilton, dated 15th February, 1835, can be used by the jury, and is the higher and better evidence of the terms and conditions on which said negro Bob was transferred from said Brown to Hamilton.

10. The jury must exclude from consideration entirely, all evidence of any witnesses, which refer to, or attempt to detail the contents of, or any right of plaintiff to freedom as derived from, any will of any one giving the negro to Geo. A. Brown, or derived from any instrument executed by Brown—the said instruments being provable by their own production, in the absence, as there is a total absence here, of any sufficient evidence to warrant proof of their contents;—and in like manner, all the statements of any such witness, which the jury may believe to be founded on, or derived from said instruments, or either of them, or the opinion of any such person whose statement is detailed, which opinion the jury shall believe to be

founded on their construction of such instrument. And all such statements as to Bob's freedom, which the jury may believe to be founded on, or derived from, the supposed effect of any such instrument, must also be excluded.

11. That no statement of Brown or Hamilton detailed before the jury, is evidence at all in the case, and must be excluded by the jury, unless it is proven to their satisfaction that defendant claims the negro under them and the same title they respectively had, and under no other or different title derived from another source.

12. No act, statement or writing of Brown or Hamilton given in evidence before the jury, or all of them together, can operate in law to free Bob.

13. An insolvent man cannot free his slave, so as to prevent his creditors from selling the slave absolutely and holding him in slavery for life.

14. Oral or verbal statements cannot be given in evidence, or treated by the jury as sufficient, to vary, alter or change a written contract, instrument or deed; and if a deed, writing or true copy is in evidence, the jury are bound to take instrument or copy, and disregard the verbal statements.

15. That the evidence in this cause is not sufficient to warrant the jury in finding for the plaintiff, and the jury ought to find as in the case of non-suit, that is, should find for defendant.

16. A negro can acquire no right to freedom, on mere grounds of equity, but only on the grounds of a strict compliance with the law authorizing manumission."

The Court gave the 1st, 4th, 11th and 14th of these instructions. and refused to give the others.

The bills of exception taken by the defendant cover the objections made by him to the decisions of the Court above indicated, with others which are deemed of no consequence.

Bob being a negro, he commenced the trial with the presumption against him that he was a slave, that being the condition of the negro race generally in this State; and he was required to prove his right to freedom. *Digest, ch.* 74, *sec.* 12.

There was no evidence tending to prove that he was born free. If free at all, it was by some act or instrument of emancipation. If he had been emancipated, it was incumbent on him to produce upon the trial the instrument of liberation; or to prove that it had once existed, and was lost, destroyed or not within his control, and then to introduce secondary evidence of its character and contents. 22 *Ala. R.* 601.

There was no competent proof that he was emancipated by the will of Brown's grandfather. The will was not produced, and no foundation laid for the admission of secondary evidence of its provisions. His counsel here, however, do not insist that the supposed will cuts any figure in the case.

No instrument of emancipation being proven or produced, were the loose statements of Brown, that Bob was to be a slave until he arrived at a certain age, when he was to be appraised, and to be liberated after he worked out his appraised value, competent evidence that he had been so conditionally emancipated?

To test the legal effect of such declarations or statements in the strongest light, let it be supposed that Brown had not sold Bob to Hamilton or any one else, but had kept him in servitude until the time this suit was commenced, and that Bob had brought suit against him for his freedom, instead of Jackson; would it be competent for Bob to establish his right to freedom by proving such declarations, etc., of Brown?

If there were no persons interested in the controversy but the parties to the suit, perhaps such declarations would be competent evidence against Brown. But slavery is a *status* or condition of the negro race in this State; the community at large are interested in it, and the mode of emancipation, for considerations of public policy, is regulated by law. If the slave could establish his right to freedom by such declarations of his master, or one holding under him, the emancipation laws might be avoided. The declarations of the owner might, in effect, liberate the slave, and turn him loose upon the community without his actually having been emancipated in the mode prescribed by law.

27

This subject may be illustrated by reference to rules applicable to the marriage relation, which is likewise a *status;* and the mode of dissolving the marriage contract, and the causes for which it may be dissolved, are also prescribed by law, because the public, as well as the parties, are interested in it.

In an ordinary chancery suit by one person against another, if the defendant fails to answer the bill, a decree *pro confesso* may be taken against him upon his default, which, at a subsequent term, may be made final without proof—his failure to answer is taken as a confession of the grounds of complaint.

But in a bill for *divorce*, notwithstanding the defendant may fail to answer, the Chancellor will not render a final decree divorcing the parties, without proof by the complainant of the truth of the allegations of the bill. *Viser vs. Bertrand*, 14 *Ark*. 267. *Welch vs. Welch*, 16 *Ib.* 525.

So in an ordinary suit, the complainant may obtain a decree upon proof of the declarations or admissions of the defendant. But the Chancellor would not grant a divorce upon such evidence, for, if he would, the parties might obtain a dissolution of the marriage by collusion.

It is because of the interest which the public have in the marriage relation, that suits for divorce, in the respects above stated, are not governed by the rules of evidence applicable to ordinary suits.

For similar reasons, we think the slave cannot establish his emancipation by the mere declarations of the master, either in a suit against the master, or one holding under him.

It may be next enquired whether Bob was emancipated by virtue of the contract made between Brown and Hamilton, proven and produced in evidence.

This contract bears date 15th Feb., 1835, which was before the formation of the State government, and whilst the Territorial Organization was in force. The counsel on both sides, supposing there was no statute then in existence regulating the emancipation of slaves, have discussed the right of the master to emancipate his slave in a community where slavery exists, in the absence of any statute authorizing it. It is unne-

cessary, however, for us to speculate on this interesting subject, because there was a statute in force in the Territory at the time the contract in question was made. See *Steel & Mc-Campbell's Digest p.* 526. This statute made it lawful for the master to emancipate his slave, by will or deed, proved in the Circuit Court by two attesting witnesses, or acknowledged by the owner in the Court, etc.

If the instrument in question could be construed to have been intended to emancipate Bob presently, it would be invalid as an instrument of emancipation, because it was not proved or acknowledged in the mode prescribed by the statute then in force. *See the authorities cited below.*

There can be no pretence, however, that the effect of the contract between Brown and Hamilton was to emancipate Bob presently. Hamilton merely agreed to liberate him in future upon certain terms stated in the contract.

After this contract was made, and before the time arrived for Hamilton to have Bob appraised under the terms of the contract, the constitution was adopted containing the clause declaring that the General Assembly " shall have power to pass laws to *permit* owners of slaves to emancipate them, saving the right of creditors, and preventing them from becoming a public charge." *Art.* 7, *sec.* 1. And the Legislature, in pursuance thereof, had passed an act authorizing the emancipation of slaves, and prescribing the mode in which it might be done. *Dig. ch.* 63. If Hamilton, therefore, had desired to liberate Bob in compliance with the terms of his contract, he would have been required to do it, to make the emancipation effectual, in one of the modes prescribed by the statute:—that is, by will, or some other instrument in writing; under his hand and seal, attested by two witnesses, and proved in the Circuit Court of the county where he resided, or acknowledged by him in such Court. *Digest ch.* 63, *sec.* 1.

In *Campbell et al. vs. Campbell,* 13 *Ark.* 519, this Court, by the Chief Justice, said: " We may agree with the counsel for appellants in the conclusion to which his argument tends, that under the constitution and laws of ths State, the power to

emancipate slaves is derived from the statute, and can only be exercised in the mode directed by the statute. That the act of emancipation cannot be treated as a contract between the master and the slave, or with any person for his benefit; but as an act of renunciation on the part of the master, and until it is consummated, either by deed or will, in the public and solemn manner required by law, the right of the master, or his legal representatives, to absolute dominion and property in the slave remains unimpaired." See, also, *McCutchen et al. vs. Marshall et al..* 8 *Peter's* 238. *Winney vs. Cartwright,* 2 *A. K. Marsh. R.* 493. *Lewis vs. Fullerton,* 1 *Rand.* 15. *Atwood's heirs vs. Beck ad.,* 21 *Ala.* 590.

There was no proof produced upon the trial that Hamilton ever, by will or deed, emancipated, or attempted to emancipate, Bob, in pursuance of his contract with Brown. Either before, or shortly after his death, Bob was sold under execution as his property, purchased by Brittin & Royston, and afterwards, it seems, sold by Brittin to Jackson.

But it is insisted by the counsel for Bob, that if the proof showed he was entitled to his freedom, and the jury so found, the Court, though a law Court, had the power to order the execution of any instrument necessary for his emancipation. That the statute gives the right of action to the negro for his freedom in the law Court only, and the Court could necessarily exercise all the incidental powers required to make the remedy complete.

If that were true, the proceedings in this case were, nevertheless, erroneous. Bob alleged in his declaration that he was free, the jury so found, and the Court rendered the ordinary statutory judgment that he be liberated. No order was made requiring any instrument of emancipation to be executed by any one. If the Court had attempted to make such order, upon whom would it have imposed the duty of executing the instrument? Not upon the defendant *Jackson,* because he was under no contract or legal obligation to emancipate the negro. Not upon Hamilton, because he was dead. Not upon his executor or administrator, for he was not a party to the suit.

Hamilton agreed with Brown to have Bob appraised at the expiration of five years from the date of his contract, and to liberate him after he worked out his appraised value. He obligated himself to do this under a penalty of six hundred dollars. If Hamilton had so obligated himself directly to Bob, instead of Brown, Bob could not have compelled him to a specific performance of the contract, in a Court of law or equity, or have recovered the penalty for his failure to do so—because it was an executory contract for emancipation. Emancipation is an act of grace or benevolence on the part of the master to the slave. The slave can furnish no legal consideration for it. If the master contract with the slave, or any one for him, that the slave shall be emancipated upon his paying to his master a sum of money, or rendering him some stipulated amount of labor, although the slave may pay the money, or tender it, or perform the labor, yet he cannot compel his master to execute the contract, because both the money and the labor of the slave belong to the master and could constitute no legal consideration for the contract. See *Norris vs. Patton's ad.* 15 *B. Mon.* 575. *Willis vs. Bruce et al.,* 8 *Ib.* 548. *Cook vs. Cook,* 3 *Littell* 239. *Dunlap vs. Archer,* 7 *Dana* 31. *Hawkins vs. Hawkins,* 13 *B. Mon.* 245.

As to whether Brown has any remedy upon the contract against the representatives of Hamilton, and if any, what, we deem it unnecessary to enquire in this case.

From the principles above settled, it is manifest that the Court below erred in admitting incompetent testimony, and in giving the first instruction moved by plaintiff, and in refusing to give several of the instructions moved by the defendant.

The judgment is reversed, and the cause remanded, etc.