## BOB ALIAS ROBERT CROW VS. POWERS.

A deed of manumission, executed and acknowledged in the Circuit Court, as prescribed by the statute, (*Dig. chap.* 63, *sec.* 1,) though to take effect *at the death of the grantor,* held a sufficient emancipation of slaves; and that, immediately upon the death of the grantor, the slaves are entitled to freedom.

An instrument of writing to take effect at the death of the grantor, cannot be received as evidence of a testamentary disposition of property in this State, unless it be regularly established and recorded as such in the Probate Court.

The assent of the executor to the enlargement of slaves emancipated by will, is as necessary as in ordinary cases of a specific legacy: and he is entitled to the possession of such slaves—to pay debts that may be proved against the estate—unless he shall have assented to their freedom, until after the expiration of two years from the date of his letters.

A widow is entitled to dower in the property of which her husband died seized, including slaves emancipated by his will; and if property be given her by the will in lieu of dower, she has until eighteen months after probate of the will, to elect whether she will take under the will, or renounce the bequests and claim dower in the estate.

Where the owner of slaves emancipates them by deed, to take effect at his death, and provides for their emancipation by will, the latter is inoperative, and can have no effect upon the deed—the slaves, in such case, take their freedom immediately upon the death of the grantor—they are no part of his estate—not subject to the widow's dower, nor to the debts contracted subsequent to the deed.

Slaves emancipated by will are held by the executor, subject to the debts of the testator: those emancipated by deed in the lifetime of the deceased, may be subjected, by proceeding in chancery, to the payment of debts contracted previous to the execution of the deed.

*Appeal from Yell Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

HOLLOWELL, for the plaintiff.

To hold that a slave cannot be manumitted and set free under our statute, either by deed or will, would, it seems to me,

be to deny the plain provisions of its language. *Dig., chapter entitled Emancipation, secs. 1, 2 and 3.*

It can not be urged that the case at bar does not come within the purview of the statute, without assuming a position wholly untenable. The deed, it is true, provides, that it shall not take effect, till a day or time in the future—until after the grantor's death, and the slaves named therein, appellant, one of the number, were by the terms of the deed required to serve the grantor as slaves, during the time he might survive. But to insist that the deed, in consequence of that provision contained in it, expressly reserving the operation and taking effect of the deed, till after the grantor's death, rendered it inoperative and void, *ab initio,* is most unquestionably assuming a position which cannot be maintained. That the deed is good and valid in law, reference is made to the following authorities: *Clark vs. Bartlett,* 4 *Bibb* 201; *Fanny vs. Bryant,* 4 *J. J. Marsh.* 370; *Black vs. Meaux,* 4 *Dana* 188 *and* 190; *Johnson's adms. vs. Johnson's Heirs,* 8 *B. Mon.* 470; *Catin vs. D'Orgency's Heirs,* 8 *La. Rep.* 218; and therefore its exclusion by the Court from the jury on the trial, was erroneous.

The first instruction evidently had in view the keeping of appellant in custody of defendant, for the benefit of the creditors of the testator, until the statute of limitations had barred all claims against the estate, thereby declaring appellant assets in the hands of the administrator, and placing him, with regard to his legacy of freedom, in the same position as other legatees.

Such cannot be the law; slaves who are emancipated by will cannot be held by the executor for the benefit of creditors, nor can any steps be taken by such creditors of the estate of the testator, without making the liberated negroes a party to the proceedings, who will be permitted to come forward and defend their rights—to make a tender to the complainants of their lawful demands, and in default thereof, will be ordered, by the Chancellor, into the hands of the receiver; and there remain to be by him hired but till their wages are sufficient to satisfy the demands of the complaining creditors, but to place them again

into a state of absolute slavery, would be going a little beyond the well established land-marks established by the courts of many, if not all the southern States. In support of these positions, reference is made to the following authorities: *Caleb vs. Field*, etc., 9 *Dana* 348; *Ferguson, etc., vs. Sarah, etc.*, 4 *J. J. Marshall* 105; *Walthall Exrs. vs. Robinson et al.*, 2 *Leigh Rep.* 189.

It is insisted for appellant, that the emancipated slave has a vested right in his legacy to freedom, when liberated by will, which takes effect at the death of the testator, unless otherwise specially provided in the will, and although it may be encumbered by creditors, by direct proceedings against the manumitted party; yet there is no power known to the law, except for crime, that can divest him of the right when once acquired. Taking this view of the case, an executor has no right to the possession of, or to control, any slave whom his testator has directed in his will, shall be free, when the period of his freedom arrives, but when the event takes place, the contingency upon which the freedom of the slave depended, has happened, the executor has no power to subject him to the payment of the testator's debts, or convert him into assets of the estate; for he is entitled to his freedom wholly regardless of the executors, heirs at law, or creditors, and this right accrues, *eo instanti*, at the death of the testator. And whilst the second instruction is correct, touching the rights of general creditors and distributees, in this case, it was wholly at variance with every principle, recognizing the rights of emancipated slaves, placing them on equal footing with heirs, creditors and distributees, and, as such, was well calculated to mislead the jury, and should not have been given. *Snead vs. David*, 9 *Dana* 358; *Black vs. Meaux*, 4 *Dana* 188; *Abe vs. Tevis*, 4 *Dana* 247; *Nancy vs. Snell*, 6 *Dana* 156.

WILLIAMS & WILLIAMS, for appellee.

The first and main question is: Did the Court err in excluding the deed of emancipation from the jury?

2d. Did the Court err in giving the instructions asked by Appellee?

Upon the first question, we are free to admit, that it is not free from difficulties, but we are satisfied that the Court below properly excluded it from the jury; because it was not a deed that from its terms operated and went into effect, immediately upon its execution, but was to take effect at the death of the grantor; consequently, it was to all intents and purposes, a will in its practical operation and bearing; hence to give it validity, it must have been executed with the formalities of a will, and probated and carried into execution accordingly. And without this, it had no legal existence for any purpose, much less as the basis of a suit for freedom. The Appellant could not take a remainder in his own freedom; and therefore the deed was purely testamentary. See 1, *Jarman on Wills, page* 12 *and* 13, *et seq.*

A paper which purported to be a deed, and was executed as such, but which was not to take effect until after the death of the grantor, was construed as a will, in order to give it effect. *Henderson vs. Fairbridge*, 1 *Russell Ch. Rep.* 479; *Millege vs. Lamar*, 4 *Desassure* 617; *Gage vs. Gage*, 12 *N. Hamp.* 371; *Ingram vs. Porter*, 4 *McCord* 198; *Thorold vs. Thorold*, 1ˢ *Phill.* 1; *Singleton vs. Bremer*, 4 *McCord* 12; *Allison vs. Allison*, 4 *Hawks.* 141. (I have not examined the last case cited, but take it from another work.) And in some of the cases the instrument is held to be testamentary, although there were express words of immediate grant; and a consideration to support it, as a grant, but as upon the whole the intention was, that it should have a future operation after his death, it was considered as a will. See *Haberghan vs. Vincent*, 2d *Vesey, Jun.* 204; *S. C.* 4 *Bro. C. C.* 355; cited in 1 *Jarman on Wills, page* 15.

We submit another view upon this point: That the statute of Arkansas, *Dig. chap.* 63, under which this deed was executed, only recognises deeds of emancipation that operate *in presenti*. The 2d *sec. of chap* 63, provides, that such emancipation shall have the effect to discharge the slave from the performance of

any contract entered into during servitude, and shall make such slave as fully and perfectly free, as if such slave had been born free. ' Now, of course, the appellant could not be discharged from servitude, if the deed by its terms did not do it, but continued him in slavery until the death of his master; and if he was not discharged by the law of the land, the deed would be void. *McCutchen et al vs. Marshall et al.*, 8 *Peters Rep.* 220; 6 *Rand.'s Rep.* 173; *Givens vs. Mann*, 6 *Munford's Rep.* 191; *Lewis vs. Fullerton*, 1 *Randolph's Rep.* 15; *Donaldson vs. Jayne*, 1 *Bibb's Rep.* 57; *Fisher's Negroes vs. Dobbs and others*, 6 *Yerger* 119; *Hamilton vs. Cragg*. 6 *Har. and Johns. Rep.* 16; *Hall vs. Mullan*, 5 *Har. and Johns. Rep.* 190; *Mary vs. Morris*, 7 *Louisiana Rep.* 135; the case of *Campbell vs. Campbell*, 13 *Ark.* 518, 520.

Upon the second question, as to the correctness of the instructions asked by appellee, and given by the Court, there can be but little doubt or difficulty; and if the instructions are right, as before intimated, upon the whole record, the verdict and judgment are right; and will be therefore sustained.   Let the decisions of other States be as they may, upon the construction of their Statutes, and the rights of administrators in similar cases, and we are perfectly free to admit that the case of *Ferguson et al. vs. Sarah*, 4 *J. J. Marshall's Rep.* 103, and perhaps one other decision in Kentucky, is apparently against us; but upon the other hand, in support of the instructions that the administrator had a right to return the slaves, until the statute of non-claim barred the debts, we refer to the case of *Negro George et al. vs. Corse's admr.*, 2 *Harr. & Gill's Rep.* 1; *Dunn vs. Amy*, 1 *Leigh's Rep.* 465

Mr. JUSTICE HANLY delivered the opinion of the Court.

On the 12th of August, 1856, *Bob, alias, Robert Crow*, a man of color, brought an action for freedom, in the Yell Circuit Court, against John Powers.   The cause was tried by a jury on the plea of not guilty, and verdict for the defendant.   Pending the trial, the plaintiff excepted to several decisions of the Court, and appealed from the final judgment.

To sustain the action on his part, the plaintiff offered to read in evidence the following instrument of writing:

" Know all men by these presents that I, *Eli Crow*, of the county of Yell and State of Arkansas, for and in consideration of faithful services and attention rendered me by my slaves, *Bob*, Mariah, Patsey, John, Nancy, Lewis, George, James and Joe, and from motives of humanity and benevolence towards them, have manumitted and emancipated, and hereby do manumit and emancipate and set free from slavery, my negro man known and named Bob, aged about 37 years; my negro woman, known and named Mariah, 34 years old; my negro woman Patsey, known and named Patty or Patsy, aged about 33 years; my negro girl Nancy, aged about 15 years; my negro boy named John, aged about 19 years; my negro boy named George, aged about 19 years; my negro boy named Lewis, aged about 14 years; my negro boy named James, aged about 8 years; and my negro boy Joseph, named and called Joe, aged about 6 years; all of which my negroes, named, aged and as hereinbefore described, I do hereby give, grant and release unto them and each of them, Bob, Mariah, Patsey, John, Nancy, George, Lewis, James and Joe, all my right, title and claim,.of, in and to each and every of their persons, labor and services, and of, in and to the estate and property which they, or any, or either of them may acquire or obtain; and doth hereby emancipate, set free and fully discharge Bob, Mariah, Patsey, Nancy, John, George, Lewis, James and Joe, from all slavery or servitude to me or my heirs, henceforward and forever, *after my death.*

In testimony whereof I have hereunto set my hand and seal this 9th day of August, in the year of our Lord one thousand eight hundred and fifty-three.

ELI. CROW, [SEAL.]

Signed, sealed and delivered in the presence of us.

G. W. LEMOYNE,<br>ROBERT VEZEY.

This instrument appears from the certificate attached thereto, to have been acknowledged, before the Circuit Court of Yell

county, on the 26th of September, 1853, by the grantor therein.

The plaintiff furthermore offered to prove, in connection with the above instrument, that he was the slave of Eli Crow, the grantor therein, at the time of its execution; that he was the identical negro Bob therein named, and that Crow had departed this life.

To the reading of which instrument the defendant objected, on the ground that " the deed, by its terms, did not take effect *in presenti*, but *in futuro*, and was testamentary in its character," which objection was sustained by the Court, and the deed was excluded from the jury, and the plaintiff excepted.

1. The first question arising on the record, therefore, is, whether the Court below did, or did not err, in excluding from the jury the instrument of writing in question with the other evidence offered by the plaintiff in connection therewith?

The determination of this question will necessarily lead us to enquire whether it is competent, under our peculiar laws, for an owner of slaves in this State, to emancipate, and if so, how, in what form, and under what circumstances may he do so.

It is ordained by the constitution, that the General Assembly " shall have power to pass laws to permit owners of slaves to emancipate them, saving the rights of creditors, and preventing them from becoming a public charge."   See *Cons. Ark., Art.* 8, *sec.* 1, *Dig., p.* 65.

Under this express grant of authority to the General Assembly by the constitution, the Legislature, on the 19th February, 1838, provided by an act a mode by which the policy indicated by the constitution, in relation to slaves, might be rendered effective to those who should be disposed to avail themselves of it, and enacted, among other provisions on the subject, as follows:

" SEC. 1. Any person may emancipate his slaves, by last will and testament, or any other instrument in writing under hand and seal, attested by two witnesses and proved in the Circuit Court where he resides, or acknowledged by the party in the same Court."

" Sec. 2. Such emancipation shall have the effect to discharge the slave from the performance of any contract entered into during servitude, and shall make such slave as fully free as if such slave had been born free."

" Sec. 3. All slaves emancipated under the provisions of this act, shall be liable to be taken in execution, to satisfy any debt contracted by the person emancipating them, prior to the emancipation, as if no such emancipation had been made." See *Digest, chap.* 63, *p.* 476.

Slavery being a status or condition of the negro race in this State, and the community at large being interested in it, and the mode of emancipation, for considerations of public policy, being regulated by law, we apprehend there can be no doubt, but that slaves cannot be emancipated unless in one of the two ways or modes prescribed for that purpose, that is to say:

1st. By last will and testament: or 2d. By any other instrument in writing, under hand and seal, attested by two witnesses and proved, or acknowledged in the Circuit Court of the county where the party making it resides. See *Jackson vs. Bob*, 18 *Ark. Rep.* 399; *Harriet et al. vs. Swan & Dixon, Ib.* 495.

Let us consider, therefore, whether the instrument offered in evidence by the plaintiff, in the court below, is such an instrument, as had the effect, under the law, to emancipate or manumit the plaintiff.

It is contended, on the part of the defendant, that the instrument in question, cannot operate as a deed of emancipation, because, by its terms, it was not to have effect until after the death of the grantor, and that it could not be read, at the trial below, as a testament, or a testamentary emancipation of the plaintiff, because it had not been probated and recorded as the law directs, maintaining, as he does, that a will, whether of personal or real estate, cannot be used as a medium or instrument of evidence, either at law or equity, until after it has been regularly probated and recorded in the manner provided by the statute.

We will examine the positions assumed by the counsel, and

dispose of them as they occur, as it is believed they involve the whole enquiry under this head.

Does the fact that Crow reserved to himself in the deed, the use of the slaves during his life, render it ineffectual as a deed of emancipation?

Throwing out of view, for the time being, the fact, that the evident design of this deed was to emancipate and set free the negroes therein named; and regarding it, for the present, as a deed of gift, from one man to another, of the slaves named, would the reservation of the use for life by the grantor, of itself, independent of any other consideration, render it void, or would it, in such case, pass title in the slaves to the donee?

We have been referred to various authorities by the defendant's counsel, to sustain his position, that the reservation of the use in the grantor renders the deed void and inoperative. We have examined those authorities in connection with the current of authorities bearing on the subject, and find the result to be, that a voluntary deed conveying slaves, and reserving a life estate to the grantor, if delivered to the grantee, passes a present title to the grantee, and is not testamentary in its character. See 2 *Kent's Com.* 258; *Caines & wife vs. Marley*, 2 *Yerg. Rep.* 582; *Johnson vs. Mitchell et al.*, 1 *Humph. Rep.* 168; *Hartsell vs. Gorge*, 3 *Ib.* 255; *Jacob vs. Sharp, Meigs Rep.* 114; *Morris vs. Owens*, 2 *Call's Rep.* 432; 2 *Munf. Rep.* 162; *Withers' admr. vs. Frazer*, 1 *Hayw. Rep.* 275; *Sarah Neal's adr. vs. Haddock*, 2 *Ib.* 183; *Lewis vs. Porter*, 1 *Ib.* 234; *Robinson vs. Schley & Cooper*, 6 *Geo. Rep.* 515; *Caturlin vs. Hardy*, 10 *Ala. Rep.* 511; *Adams vs. Haughton*, 13 *Ib.* 731; *Summerlin vs. Gibson*, 15 *Ib.* 406; *Alexander vs. Burnet*, 5 *Rich. Rep.* 189; *Wyche vs. Green*, 21 *Geo. Rep.* 159; *Keen vs. Maray*, 3 *Bibb Rep.* 39; *Clark vs. Bartlett*, 4 *Ib.* 201; *Banks vs. Monksberry*, 3 *Litt. Rep.* 275.

The above rule is restricted or qualified by our statute, in which it is provided that " No gift of any slave shall pass or vest any right, estate or title, in or to any such slave, in any person whatsoever, unless the same be made; first, by will duly proved and recorded; or, second, by deed in writing, to be

proved by not less than two witnesses, or acknowledged by the donor, and recorded in the county in which one of the parties lives, within six months after the date of such deed."

" This act shall only extend to gifts of slaves, whereof the donors have, notwithstanding such gifts, remained in possession thereof, and not to gifts of such slaves as have come to the possession of and remain with the donee, or some person claiming under such donee." See *Digest, chap*, 153, *secs.* 7 *and* 8, *p.* 944.

In *Blagg vs. Hunter*, 15 *Ark. Rep.* 246, it was decided by this Court that to make a deed of gift of a slave effective to a person, other than a blood relation, where the possession does not accompany the gift, it is absolutely necessary that the deed must be *witnessed, proved,* or *acknowledged and recorded,* as prescribed by the above statute. There cannot be a doubt but that this is the law pertaining to such gifts in general, but we apprehend a deed of emancipation is taken out of the opera- tion of the statute applying to gifts generally, by the plain letter and spirit of the act which warrants the emancipation of slaves in this State. All that is required to communicate freedom to a slave, as we have before shown, is a strict compliance with the statute authorizing it. In the instance before us, the plaintiff produced, on the trial, an instrument, under the hand and seal of his master, witnessed by two witnesses, and acknowledged by Crow, the grantor, in the Circuit Court of Yell county, where he resided at the date of its execution. It is presumed the Legislature intended the record of the acknowledgment in the Circuit Court in cases of emancipation by deed, to be in lieu of the registration required of deeds of gifts in other cases. Let this, however, be as it may, the deed of emancipation, offered in evidence by the plaintiff at the trial below, possessed all the essential requisites of the statute, and, therefore, afforded intrinsic evidence of itself of his freedom, if the fact that Crow reserved to himself, therein, the right to retain the plaintiff in his service until his death, did not defeat the evident objects of the deed, and the benevolent intentions of the donor.

28

As far as our researches have extended, on this branch of the subject, we feel no hesitancy in declaring that a vast preponderance of authority is in support of the validity of the deed of emancipation in the case before us.  See *Clark vs. Bartlett*, 4 *Bibb Rep.* 201; *Hudgens vs. Spencer*, 4 *Dana's Rep*, 589; *Fanny vs. Bryant*, 4 *J. J. Marsh. Rep.* 370; *Johnson's ad. vs. Johnson's Heirs*, 8 *B. Mon. Rep.* 470; *Charles vs. French*, 6 *J. J. Marsh. Rep.* 331; 1 *Parsons on Cont.* 342.

In *Clark vs. Bartlett*, the Court of Appeals of Kentucky, say: " The objection taken in the argument that the instrument was in the nature of an executory agreement, not compulsive in law, cannot prevail.  The right was created, and vested by the instrument of writing, though to commence hereafter.  Nothing farther remained for the grantor to do.  The agreement, as to her, was performed, and it only waited the happening of the contingency upon which it depended, the death of the grantor, as respected its enjoyment by the grantee, which having happened, the right was thereupon complete."

In *Hudgens vs. Spencer*, the same Court said, "that the grantor intended that all his slaves should be forthwith free, and that, in postponing the times of their actual liberation, he did not mean to put off to future periods their enjoyment of personal rights; but intended only to reserve to himself such title to temporary service and dominion as would effect a transition from slavery to mere servitude and pupilage for a limited time."

There are a few cases to be met with in the books of Reports, which would seem to militate against our judgment expressed on this point; but it is believed, when those cases are considered and properly weighed, it will be found that those cited by us in support of our conclusions, are better supported by principle and reason than those opposed to them.

As to whether the instrument in question being held not good as a deed of emancipation at the trial, it could have been rendered available to the plaintiff as a testamentary emancipation, we have to say: it is clearly our opinion it could not,

under the proof afforded by the instrument itself, or that proposed to be introduced in connection therewith, coupled with the instrument. The grounds of our opinion are these: The instrument did not purport to have been probated in the Probate Court of Yell county, nor did it give any evidence that it had been recorded in that Court. Both under our statute of wills, and the general principles pertaining to evidence, a will bequeathing personal property, cannot be received as evidence, either in a court of law or equity, until after it has been regularly and duly established as such before the court having jurisdiction of such matters, and has been recorded as such. See *Digest, chap.* 170, *secs.* 28, 29; also, 1 *Lomax on Exrs.* 215; 1 *Williams on Exrs.* 320, *and authorities cited; Newton Exr. vs. Cocke Exr.,* 5 *Eng. R.* 174, *and authorities cited.*

The result of our opinion on the points involved in the enquiry under this head, is, that there is error in the ruling of the Court below in reference to the deed of emancipation, offered by the plaintiff, coupled with the other evidence proposed by him at the trial; holding, as we do, that such evidence was competent, and should have gone to the jury, as establishing, conclusively, the fact of the plaintiff's freedom from the moment of Crow's death, the period at which his enlargement was to take place, by the terms of the deed in question.

2. After the Court below refused to permit the plaintiff to read to the jury the deed made by Eli Crow, emancipating him, together with the proof proposed at the same time, the plaintiff introduced and read a paper writing, purporting to be the last will and testament of Eli Crow, together with the probate and certificates thereon endorsed; from which it appears that the same had been regularly and duly probated as such last will and testament, and as such recorded in the Probate Court of Yell county, according to law. We give here an extract from the will, which is the only part thereof bearing on this case. It is as follows :

" *Fourthly.* Having heretofore, by a deed of emancipation, manumitted and set free all the negroes, or persons of color, in

my possession and under my management and control, and being desirous that said negroes, by me emancipated, shall, ever after my death, enjoy their freedom, and never in this, or in any other State, be subject to bondage or slavery, I do hereby, this my last will and testament, declare that I do set free and forever discharge from bondage my said negroes, known as Bob, Patsey, Lewis, Jim, Joe, Mariah, John, George and Nancy, and doth hereby desire my executors to protect them, and while in this State, to become responsible by bond, or as the law doth or may require for their safety, and if they, or either of them, desire to leave Arkansas, and emigrate to a free State, I will that my executors assist them in so doing."

The plaintiff, at the same time, also, produced evidence, to the effect, that Crow was dead when probate was made of his will; that he, plaintiff, was the indentical person referred to in the will by the name of Bob, and that defendant had been duly appointed the administrator of the estate of Crow, with his will annexed; and that he, as such, claims to hold and retain the plaintiff in slavery and servitude. This testimony seems to have been introduced without objection on the part of the defendant, and was all the evidence really introduced at the trial in the Court below.

The plaintiff appears to have asked for no instructions. The defendant moved for the following:

1. That if the jury believe, from the evidence, that plaintiff was a slave of Eli Crow in his life time, that he was emancipated by the will of said Eli Crow, that said Eli is dead, and said will has been probated, and said defendant is administrator of said Eli, with the will annexed, and that two years had not elapsed since the date of said letters, before this suit was commenced, they must find for the defendant.

2. That the administrator of an estate is entitled to the possession of the slaves of the estate of his intestate for the period of two years, at least, after the date of the letters of administration, against all persons, unless those entitled to distribution

OF THE STATE OF ARKANSAS 437

Term, 1858 ]          Bob alias Robert Crow vs. Powers.

give a refunding bond to the administrator at the end of one year.

3. That the widow of Eli Crow is entitled to dower in said slaves, and the defendant, as administrator, is entitled to keep plaintiff in slavery, until her dower is assigned, or his administration closes at the end of three years.

These instructions being given by the Court, the plaintiff excepted, and assigns that as another ground of error; which we now propose to consider and determine. Before doing so, however, we desire to be understood, that we shall consider the instructions in reference to the will alone, as if the branch of the case considered under the first head, had no connection with it, or as if the plaintiff had alone claimed his freedom under the will—preferring, as we do, to consider the effect of the deed on the will, or the will on the deed, under a separate head hereafter.

Then, as to the instructions:

*First.* In view of our statute of Administration, and the general policy of our administration and probate system, we are more inclined to adopt the rule in Virginia and Maryland, than that which obtains in Kentucky, and hold, as we do in this case, that the assent of the executor to the enlargement of slaves emancipated by will, is as necessary as in ordinary cases of a specific legacy. See *Nichols vs. Burris,* 4 *Leigh's Rep.* 296; 2 *Lomax on Exrs.* 334; *Cornish vs. Willson,* 2 *Gill's Rep.* 299.

It is said the above rule, in reference to the necessity of the assent of the executor to the enlargement of the slave emancipated by will, before he can assert his right to freedom, only obtains in a court of law. Without such assent a slave may sue for his freedom in a court of equity, and will recover on showing that the debts are paid, or that there is other estate liable and sufficient for the payment, and having it applied for that purpose. The power of the executor to withhold his assent is given him, that he may keep the emancipated slaves together, to be ready, if necessary, to answer the claims of creditors and the demand of the widow for dower, in case there should be a

widow, and the demand is made within the time limited by the statute; and, in the meantime, he may hire them out for that purpose. They are answerable for those claims, but *sub modo* only; and only on condition that there is no other estate liable and sufficient for their payment. Subject to that liability, they are free from the date of admitting the will to probate and record. See *Jiney et al. vs. Winfield, ad.*, 9 *Gratt. Rep.* 715; 2 *Lomax on Exrs.* 335; *Cornish vs. Wilson, ubi. sup.; Nichols vs. Burris, ubi sup.*

Supposing, then, that the plaintiff derived his title to freedom from the will alone, and entertaining the views just expressed in reference to the necessity of having the executor's assent to the legacy of freedom before the slave emancipated can assert his right thereto, in a court of law, and the plaintiff, in the case before us, having failed to prove such assent, or that two years after defendant's administration of the estate of Crow, under the will, had expired at the time this suit was brought, we are constrained to hold that the first instruction given by the Court below, at the instance of the defendant, was rightly given. And this brings us to the consideration of the second instruction.

*Second.* As shown above, the defendant was entitled to the possession of the slave, notwithstanding his emancipation by the will, until he assented to his enlargement as a freed man, or until after the expiration of two years from the date of his letters. (See, also *Ross et al. Exr. vs. Davis*, 17 *Ark. Rep.* 113.) We have now to consider, under this instruction, how long the power resides in an executor to withhold his assent that a legacy may be taken by a specific legatee. In *Refeld et al. Exr. vs. Bellette et al.*, 14 *Ark. Rep.* 148, it was said by this Court that, " The right of the legatee is suspended until by the assent of the executor or the lapse of time for the settlement of the estate this suspension is removed." And again, in *Ross et al. Exr. vs. Davis ub. sup.*, this Court subsequently said, " We have said that surrender was voluntarily made by the complainants, for the reason that our statute provides, that executors and

administrators shall not be compelled, even by an order of the Probate Court, to pay legacies, or make distribution of estates under their charge, until after one year from the date of their letters, except in case the property bequeathed is of a perishable nature, and would become worthless by being retained, and may absolutely retain such negroes for two years, unless otherwise ordered by the Probate Court; but when ordered to pay over, they may not do so until bond with security be given," etc.

Under these adjudications, and the construction thus given to the statute regulating such matters, we apprehend there can be no doubt, but that an executor or administrator would have the right to withhold his assent to the taking of a specific legacy, or the distribution of an estate, for two years. If, therefore, a suit at law should be brought by a legatee against an executor, within that time, it would be incumbent on him to show the executor's assent to his taking the legacy, before he could recover. And, we suppose, that if suit should be brought after the two years, and before the expiration of the full time of administration allowed by the statute, say three years, the *onus* would be changed and thrown on the executor. He would, in that event, have to show facts which would warrant him to continue the possession for the purposes of the administration; otherwise, the plaintiff, in such case, would be entitled to recover. And so we accordingly rule, and hold in the case before us.

Entertaining the views above expressed, in relation to the subject of this instruction, we have no doubt of the correctness thereof, and therefore hold that the Court below did not err in giving it to the jury.

*Third.* If the testator, Crow, had such an interest in the slaves named in his will, including the plaintiff, at the period of his death, as to confer upon them the right to freedom thereunder, the widow was certainly entitled to dower out of the interest of the husband in those slaves, under our statute; (see *Digest* 59, *sec*. 20,) unless she shall have elected to take under the will, in case provision shall have been made therein for her

in lieu of dower, or unless she shall have relinquished her claim to dower under an ante-nuptial settlement, as provided for by the statute. And it is said, this right to dower is preferred to the claims of creditors, and operates as a lien in favor of the wife upon the specific property. See *Hill's admr. vs. Mitchell et al.*, 5 *Ark. Rep.* 608; *Menifee's ad. vs. Menifee et al.*, 3 *Eng. Rep.* 9.

The executor is made the trustee, as well for the wife as the creditors, or legatees, and he holds the estate for her until her lien is rendered effectual, and the property in which such lien operates is set apart to her in satisfaction thereof by the proper court. By the tenor and policy of our administration laws, the executor retains the estate of the testator subject to the widow's prior claim to dower, until she either accepts under the will, or else renounces to take under the will, and has her dower set apart to her under chapter 59 of the Digest. But this right of election on the part of the widow only subsists for eighteen months from the death of the husband. If the election to renounce to take under the will and claim dower, is not made within the period limited for that purpose, the statute declares that the widow shall be deemed to have accepted under the will. See *Dig.*, *chap.* 59, *sec.* 27, *p.* 449.

It appears from the transcript in this case, that the testator, Crow, departed this life on the 26th January, 1856, and that this suit was tried and disposed of, in the Yell Circuit Court, on the 25th September, 1856, so that eighteen months had not expired between testator's death and the date of the trial, and although the instruction in question does not announce the law as it really exists, it is not perceived how the plaintiff could have been prejudiced thereby, in view of the facts as they appear in the transcript. The executor would not have to retain the pliantiff in his possession on account of the widow's right to demand dower beyond eighteen months from the 26th January, 1856, provided she should not have elected to renounce under the will; for it appears from the evidence proved at the trial, that there was a legacy given to her by the will. If, however,

she should have renounced under the will, and claimed to be endowed under the statute, but of which there is no evidence appearing on the transcript, her lien upon all the property belonging to the estate, including the plaintiff, would subsist, as against the defendant, until the period of his administration should cease, and even then, follow the property into the hands of his successor, or those of specific or residuary legatees. The Court below should have simply announced to the jury, in this case, in view of the facts existing at the time, that the defendant had a right to retain the plaintiff, including all the property which had come to his hands belonging to his testator's estate, for the space of eighteen months from the death of her husband, to enable the widow to elect whether she would take under the will or the statute; and if they believed this time had not expired at the time of trial, they might find, on account of that fact alone, for the defendant.

3. As heretofore announced whilst considering the instructions, we did so, without regard being had to the effect of the deed of emancipation upon the will, or the will upon the deed of emancipation, preferring, as heretofore stated, to reserve that for another head in the progress of this opinion. We now propose to consider the bearing of each with respect and reference to the other. We have said that the deed was sufficient, with the other proof offered in connection with it, by the plaintiff, to entitle the plaintiff to a judgment of freedom. His right to complete enlargement under the deed became absolute immediately on the death of Eli Crow, the grantor, at least as far as the defendant is concerned. The deed of emancipation being fully executed on the part of Crow, at the date of its execution and acknowledgment in court, he only had such interest in the slaves, upon whom it was designed to operate, as he reserved to himself thereby, and having only reserved to himself therein their service and labor until his death, as soon as that occurred his interest ceased, and nothing could pass, in respect to the negroes emancipated, either to the executor, other legatees or widow, under the will or by descent. On

Crow's death the right to freedom, under the deed, related back to its execution or acknowledgment, so that the negroes emancipated thereby, in the language of the statute, could not be "liable to be taken in execution to satisfy any debt contracted by the person emancipating them," between its execution or acknowledgment and the grantor's death. The wife could not claim dower out of them, for the reason that her husband did not die seized of them in the purview of the law. The will being intended, as far as it pertains to the negroes emancipated by the deed, to operate upon property which did not belong to the testator, is inoperative as to them. See *Sanborn vs. Goodhue*, 8 *Foster*, (*N. H.*) *Rep.* 48, and authorities cited.

The plaintiff is entitled to his enlargement under the deed, both as regards the defendant, the widow, and the creditors of Crow. Notwithstanding, the plaintiff's right to be enlarged under the deed is subordinate to the rights of creditors, existing when he was emancipated, under the express provisions of the statute, (see *Dig.*, *chap.* 63, *sec.* 3, *p.* 476.) If there should be any such creditors, they would be entitled to come into a court of chancery, after their debts shall have been allowed by the Probate Court of Yell county against the estate of Crow, and not paid for want of assets, to subject the plaintiff, with the other slaves emancipated by the deed, to the payment of their debts. It is said such a proceeding in equity is a proceeding *in rem*, to enforce the creditor's right to payment under the statute out of the slaves. But in such case the Court will not decree a sale of the negroes, so as to convert them back into slaves, but will direct them to be hired until a sufficient fund will be raised to discharge the debts with the accruing interest. See *Dunn vs. Anny*, 1 *Leigh Rep.* 465; *Patsey vs. Colin*, 1 *Hen. & Munf.* 519; *Jincy vs. Winfield*, 9 *Gratt. Rep.* 719.

Having held that the Court erred in its ruling in respect to the deed of emancipation offered by the plaintiff, and excluded by the Court from the jury, the judgment of the Yell Circuit Court in this behalf rendered, is therefore reversed, and the cause remanded to be proceeded in at the cost of the appellee.